## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,
Department of Justice, Antitrust Division
450 5th Street, NW, Suite 7100
Washington, DC 20530,

                                   *Plaintiff*,

    v.

NATIONAL ASSOCIATION FOR
COLLEGE ADMISSION COUNSELING,
1050 North Highland St., Suite 400
Arlington, VA 22201,

                                   *Defendant*.

## COMPLAINT

The United States of America, acting under the direction of the Attorney General of the
United States, brings this civil antitrust action to obtain equitable relief against Defendant
National Association for College Admission Counseling. The United States alleges as follows:

### I.      INTRODUCTION

1.      This action challenges under Section 1 of the Sherman Act, 15 U.S.C. § 1, a
number of rules that restrained competition between colleges and universities ("colleges") for the
recruitment of first-year and transfer students.

2.      Defendant National Association for College Admission Counseling ("NACAC")
is the leading national trade association for college admissions. Defendant's members are
divided roughly into two groups: non-profit colleges and their admissions personnel, and high
schools and their guidance counselors. NACAC's college members compete vigorously with
each other for college students, both incoming freshmen and transfer students. These colleges

compete in a variety of college services, including tuition cost, majors offered, ease and cost of application, campus amenities, quality of education, reputation of the institution, and prospects for employment following graduation.

3.      One condition of membership in NACAC is adherence to NACAC's Code of Ethics and Professional Practices ("CEPP" or "Ethics Rules"), which sets forth mandatory rules for how member organizations engage in college admissions. These rules are drafted, voted on, and enforced by NACAC members.

4.      As part of its CEPP, NACAC includes certain rules regarding the recruitment of students by colleges. Prior to September 2019, among these rules were ones that prevented, or severely limited, colleges from (1) directly recruiting transfer students from another college, (2) offering incentives of any kind to college applicants who applied via a process known as Early Decision, and (3) recruiting incoming college freshmen after May 1 (together, "Recruiting Rules").

5.      The Recruiting Rules were not reasonably necessary to any separate, legitimate procompetitive collaboration between NACAC members. As part of its CEPP, NACAC establishes many rules and regulations for its members' conduct throughout the college admissions process, including, among others, when applications may open and close, the definitions of Early Decision and Early Access, and the use of paid agents in recruiting students. Many of these rules appear to strengthen the market for college admissions. The Recruiting Rules, however, were not reasonably necessary to achieve the otherwise market-enhancing rules contained in the CEPP, and furthermore had the effect of unlawfully restraining competition among NACAC's college members, resulting in harm to college applicants and potential transfer students.

6.     By establishing and enforcing the Recruiting Rules, NACAC substantially reduced competition among colleges for college applicants and potential transfer students and deprived these consumers of the benefits that result from colleges vigorously competing for students. These Recruiting Rules, which were horizontal agreements among the schools participating in NACAC, denied American college applicants and potential transfer students access to competitive financial aid packages and benefits and restricted their opportunities to move between colleges.

7.     In September 2019, NACAC members voted to remove the Recruiting Rules from the CEPP. Removal of the Recruiting Rules became effective as of the time of the vote.

8.     NACAC's Recruiting Rules were unlawful restraints of trade that violated Section 1 of the Sherman Act, 15 U.S.C. § 1. The United States seeks an order prohibiting such agreements and other relief.

## II.     JURISDICTION AND VENUE

9.     Defendant NACAC is located in, and represents members that do business in, the United States. The rules at issue affected primarily the provision of college services in the United States. The colleges that provide these college services charge significant prices to students, many of whom legally reside outside the state. The sale of college services, and the NACAC rules that affect the sale, are therefore in the flow of and substantially affect interstate commerce. The Court has subject matter jurisdiction under Section 4 of the Sherman Act, 15 U.S.C. § 4, and under 28 U.S.C. §§ 1331 and 1337, to prevent and restrain Defendant and its members from violating Section 1 of the Sherman Act, 15 U.S.C. § 1.

10.     Defendants have consented to venue and personal jurisdiction in this district. Venue is proper in this district under Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391.

### III.     DEFENDANT

11.     Defendant NACAC is a trade association comprised of college admissions personnel and high school guidance counselors and their respective institutions. Although NACAC does have members around the world, its principal focus is on college admissions in the United States. NACAC currently has in excess of 15,000 members, representing several thousand colleges and high schools. In addition to maintaining and enforcing the CEPP, NACAC provides educational training to members, engages in lobbying and other public outreach, and holds dozens of popular college fairs that allow colleges to meet and recruit prospective students.

### IV.     TRADE AND COMMERCE

12.     NACAC is the largest trade association focused on college admissions in the United States.

13.     There is significant competition among colleges for college students, especially incoming freshmen. Colleges compete on a number of different dimensions of college services, including tuition cost, majors offered, ease and cost of application, campus amenities, quality of education, reputation of the institution, and prospects for employment following graduation. The focal point for that competition is the college admissions process.

14.     Colleges employ a number of competitive tactics to encourage students to apply for admission to, and ultimately attend, their institutions. Colleges typically heavily advertise to prospective applicants, including by sending physical and electronic mailings, by participating in college fairs, and by direct solicitation on high school campuses. Competition, however, does not

end there. If a prospective student is accepted by more than one college, there is typically a competitive negotiation between the student and each college over the financial aid package offered to the student. Additionally, if a college has not met its enrollment goals by the summer before school begins, it often will reach back out to prospective students to make a competitive pitch to entice the student to commit to enrolling at the college in the fall. Finally, even after classes begin, many colleges advertise college transfer programs that allow students to move from one college to another between semesters.

15.     In competitive circumstances, colleges would compete vigorously for students to purchase their college services. This competition benefits students because it lowers the cost of attendance and increases the incentive that the colleges have to provide high quality or innovative services. Competition also improves an applicant's ability to negotiate for a better financial aid package with the college. Defendant's Recruiting Rules, however, blunted several avenues of competition for students and disrupted the normal competitive mechanisms that would otherwise apply.

## V.     THE UNLAWFUL RULES

16.     For decades, NACAC has had a set of rules governing the college admissions process for its members. Historically, some of the rules were mandatory for all members, and others were voluntary "best practices." In 2017, NACAC members voted to reformulate the mandatory rules into the 2017 CEPP. The CEPP rules are mandatory for all NACAC members, which includes most non-profit colleges and universities in the United States, and also for any non-member institutions that participate in NACAC's college fairs. Accordingly, agreeing to NACAC membership, or agreeing to participate in a NACAC college fair, is equivalent to agreeing with other members or college fair participants to execute on the restrictions in the

CEPP. The 2017 CEPP governs many aspects of the college admissions process for its members, including, most relevant to this action, the recruitment of students.

17.     The 2017 CEPP included several rules that unreasonably restricted some of the ways in which colleges recruited incoming freshmen and transfer students. The three Recruiting Rules at issue in this case are (1) the Transfer Student Recruiting Rule, (2) the Early Decision Incentives Rule, and (3) the First-Year Undergraduate Recruiting Rule. While the CEPP certainly included rules and regulations that were aimed at, and actually do, increase competitiveness between schools and ease the burden of students applying to college, these Recruiting Rules were not reasonably necessary to those procompetitive rules or any other separate, legitimate business transaction or collaboration between NACAC's members. Prior to the 2017 CEPP, virtually identical rules were voted on and included in earlier NACAC rules and have been in place for years.

**A.       Transfer Student Recruiting Rule**

18.     The Transfer Student Recruiting Rule was codified at paragraph II.D.5 of the 2017 CEPP and instructed that, "[c]olleges must not solicit transfer applications from a previous year's applicant or prospect pool unless the students have themselves initiated a transfer inquiry or the college has verified prior to contacting the students that they are either enrolled at a college that allows transfer recruitment from other colleges or are not currently enrolled in a college."

19.     The Transfer Student Recruiting Rule acted as a ban on affirmatively recruiting transfer students, unduly restraining competition for transfer students amongst colleges. Without this opportunity for colleges to compete, potential transfer students may be unaware of transfer opportunities that may provide them lower priced or higher quality college services.

20.     Absent the Transfer Student Recruiting Rule, colleges can engage in significantly more recruitment of transfer students through direct solicitation or otherwise. Furthermore, colleges will likely seek to provide better experiences to their existing student base in order to retain them in the face of increased competition for transfers.

**B.     Early Decision Incentives Rule**

21.     The Early Decision Incentives Rule was codified at paragraph II.A.3.a.vi of the 2017 CEPP and provided that "[c]olleges must not offer incentives exclusive to students applying or admitted under an Early Decision application plan. Examples of incentives include the promise of special housing, enhanced financial aid packages, and special scholarships for Early Decision admits."

22.     NACAC defined Early Decision in the 2017 CEPP as an application plan where "[s]tudents commit to a first-choice college and, if admitted, agree to enroll and withdraw their other college applications." The Early Decision application plan is akin to an exclusive contract in any other industry. In this case, the student foregoes the opportunity to consider the competitive offers of other institutions in exchange for an early decision on acceptance. Colleges thus stand as direct competitors for Early Decision applicants, because those applicants are far more likely, if accepted, to attend the college. This results in an increased yield, which is the percentage of accepted applicants that choose to attend the college. Yield is critically important to colleges—overestimating expected yield can lead to less students attending than anticipated (thus lowering total tuition received), which could force the college to cut classes or layoff staff. The increased yield from Early Decision applicants is financially significant to colleges.

23.     The Early Decision Incentives Rule explicitly limited the scope of competition for Early Decision students by removing the ability of colleges to incent students financially or

otherwise. At base, the only form of payment an institution may provide in exchange for the exclusive contract with an applicant is the early decision itself. The rule prohibited all other forms of competition specifically targeted at particular Early Decision applicants.

24.     Absent the Early Decision Incentives Rule, colleges are free to use any number of competitive levers to more aggressively recruit students. Some institutions may prefer to offer only the early decision, while others might compete more aggressively, such as by offering scholarships, preferential housing, or early course registration for those admitted under Early Decision.

**C.      First-Year Undergraduate Recruiting Rule**

25.     The First-Year Undergraduate Recruiting Rule was codified at paragraph II.B.5 of the 2017 CEPP and required that, among other things, "[c]olleges will not knowingly recruit or offer enrollment incentives to students who are already enrolled, registered, have declared their intent, or submitted contractual deposits to other institutions."  Furthermore, while the rule allowed colleges to "contact students who have neither deposited nor withdrawn their applications to let them know that they have not received a response from them," it also commanded that schools could "neither offer nor imply additional financial aid or other incentives" were available unless the student had "affirmed that they [had] not deposited elsewhere and [were] still interested in discussing fall enrollment."

26.     The First-Year Undergraduate Recruiting Rule imposed significant restraints on a college's ability to recruit students. The rule created an arbitrary deadline of May 1 for all colleges to cease improving their recruitment offers to students, even though many students do not decide on a college until well after May 1 and many colleges therefore can reallocate resources to make better offers after May 1. Furthermore, the rule imposed significant hurdles

before a college could improve its offer to a prospective student, requiring that the student first

affirm *both* that they "[had] not deposited elsewhere" and were "still interested in discussing fall

enrollment." By directly limiting the ability of colleges to improve their offers to students, the

First-Year Undergraduate Recruiting Rule operated as a significant restraint on competition.

27.     The arbitrariness of the May 1 deadline was fully highlighted by the recognized

exception to the rule "when students are admitted from a wait list." Section II.C of the CEPP

regulates institutions' use of wait lists and explicitly authorizes schools to accept students off of

a wait list as late as August 1, even when those students have already committed to attend

another school. NACAC thus allows for vigorous competition over a student already committed

to another school when a change in circumstances frees up a spot for a student on the wait list.

The change in circumstances that free up additional resources to make a better offer is not

conceptually distinct, but the rules explicitly allowed the former and prohibited the latter,

restricting an opportunity for students to benefit from the sorting process.

28.     Absent the First-Year Undergraduate Recruiting Rule, institutions are free to

continue to improve their offers to students after May 1, to the benefit of those students. If

students have made up their minds about their school of choice, or are otherwise insensitive to

the change in circumstances, they can simply reject any further offers received from other

schools. For students who may change their minds due to a more beneficial offer, continued

recruitment can only work to their benefit.

## VI.     VIOLATION ALLEGED

29.     Defendant's college members are direct competitors in college services and

compete vigorously for students. Defendant coordinated and enforced an anticompetitive

agreement that restrained colleges from improving their offers or otherwise competing vigorously to be selected by students in the college admissions process.

30.     Defendant's Recruiting Rules eliminated significant forms of competition to attract students. These rules, which were horizontal agreements between NACAC's college members, denied college applicants and potential transfer students access to potentially better financial aid packages and benefits and restricted their opportunities to move between colleges that offered superior services.

31.     Accordingly, Defendant's Recruiting Rules constituted unreasonable restraints of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

## VII.     REQUEST FOR RELIEF

32.     The United States requests that this Court:

(a)     adjudge and decree that Defendant's Recruiting Rules are unreasonable restraints of trade and interstate commerce in violation of Section 1 of the Sherman Act;

(b)     enjoin and restrain Defendant from enforcing or adhering to any Recruiting Rules that unreasonably restrict competition for students;

(c)     permanently enjoin and restrain Defendant from establishing similar rules in the future, except as prescribed by the Court;

(d)     award the United States such other relief as the Court may deem just and proper to redress and prevent recurrence of the alleged violations and to dissipate the anticompetitive effects of the illegal agreements entered into by Defendant; and

(e)     award the United States the costs of this action.

Dated: December 12, 2019

Respectfully submitted,

FOR PLAINTIFF UNITED STATES OF AMERICA

_____
MAKAN DELRAHIM
Assistant Attorney General for Antitrust

_____
AARON D. HOAG
Chief
Technology and Financial Services Section

_____
BERNARD A. NIGRO, JR.
(D.C. Bar #412357)
Principal Deputy Assistant Attorney General

_____
DANIELLE HAUCK
ADAM SEVERT
Assistant Chiefs
Technology and Financial Services Section

_____
KATHLEEN O'NEILL
Senior Director of Investigations and
Litigation

_____
RYAN S. STRUVE (D.C. Bar #495406)
TRAVIS CHAPMAN
AARON COMENETZ (D.C. Bar #479572)
ERIN CRAIG
ADRIENNE HAHN
Trial Attorneys

United States Department of Justice
Antitrust Division
Technology and Financial Services Section
450 Fifth Street NW, Suite 7100
Washington, D.C. 20530
Telephone: (202) 514-4890
Email: ryan.struve@usdoj.gov

## CIVIL COVER SHEET

JS-44 (Rev. 6/17 DC)

| **I. (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| UNITED STATES OF AMERICA,<br>Department of Justice, Antitrust Division<br>450 5th Street, NW, Suite 7100<br>Washington, DC 20530 | NATIONAL ASSOCIATION FOR COLLEGE ADMISSION COUNSELING,<br>1050 North Highland St., Suite 400<br>Arlington, VA 22201   ⊞ |
| **(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Arlington<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| **(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
| Ryan S. Struve<br>U.S. Department of Justice, Antitrust Division<br>450 5th Street NW; Suite 7100<br>Washington, DC 20530<br>202-514-4890   ⊞ | John J. Miles, Esq.<br>Baker, Donelson, Bearman, Caldwell & Berkowitz, PC<br>901 K Street, NW; Suite 900<br>Washington, DC 20001<br>202-326-5008 |

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

- (●) 1 U.S. Government Plaintiff
- (○) 2 U.S. Government Defendant
- (○) 3 Federal Question (U.S. Government Not a Party)
- (○) 4 Diversity (Indicate Citizenship of Parties in item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place an X in one category, A-N, that best represents your Cause of Action and **one** in a corresponding Nature of Suit)

○ **A.** *Antitrust*

- [X] 410 Antitrust

○ **B.** *Personal Injury/ Malpractice*

- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Medical Malpractice
- [ ] 365 Product Liability
- [ ] 367 Health Care/Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Product Liability

○ **C.** *Administrative Agency Review*

- [ ] 151 Medicare Act

**Social Security**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**Other Statutes**
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

○ **E.** *General Civil (Other)*    **OR**    ○ **F.** *Pro Se General Civil*

**Real Property**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent, Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**Personal Property**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**Bankruptcy**
- [ ] 422 Appeal 27 USC 158
- [ ] 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Conditions
- [ ] 560 Civil Detainee – Conditions of Confinement

**Property Rights**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent – Abbreviated New Drug Application
- [ ] 840 Trademark

**Federal Tax Suits**
- [ ] 870 Taxes (US plaintiff or defendant)
- [ ] 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**Other Statutes**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 430 Banks & Banking
- [ ] 450 Commerce/ICC Rates/etc.
- [ ] 460 Deportation

- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions
- [ ] 470 Racketeer Influenced & Corrupt Organization
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Satellite TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes
- [ ] 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/Privacy Act* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |
| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

⦿ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi-district Litigation  ○ 7 Appeal to District Judge from Mag. Judge  ○ 8 Multi-district Litigation – Direct File

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Section 1 of the Sherman Act, 15 U.S.C. § 1, Agreement in restraint of trade

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $<br>JURY DEMAND: | Check YES only if demanded in complaint<br>YES ☐  NO ☒ |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☐  NO ☒ | If yes, please complete related case form |
|---|---|---|---|

DATE: December 12, 2019   SIGNATURE OF ATTORNEY OF RECORD _Ryan Stra_

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

VI.  CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

NATIONAL ASSOCIATION FOR
COLLEGE ADMISSION COUNSELING,

*Defendant*.

**CERTIFICATE OF SERVICE**

I, Ryan S. Struve, hereby certify that on December 12, 2019, I caused a copy of the Complaint, Explanation of Consent Decree Procedures, Stipulation and Order, and proposed Final Judgment to be served on National Association for College Admission Counseling by mailing the documents electronically to their duly authorized legal representatives, as follows:

John J. Miles, Esq.
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
901 K Street, NW
Suite 900
Washington, DC 20001
202-326-5008

_____/s/   Ryan S. Struve_____
Ryan S. Struve
D.C. Bar No. 495406
Trial Attorney
U.S. Department of Justice
Antitrust Division
450 5th St.  NW, 7100
Washington, DC  20530
202-514-4890