UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

                      *Plaintiff*,

    v.

NATIONAL ASSOCIATION FOR
COLLEGE ADMISSION COUNSELING,

                      *Defendant*.

## FINAL JUDGMENT

WHEREAS, Plaintiff, United States of America, filed its Complaint on [DATE], alleging that Defendant National Association for College Admission Counseling violated Section 1 of the Sherman Act, 15 U.S.C. § 1, the United States and the Defendant, by its attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law;

AND WHEREAS, this Final Judgment does not constitute any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, the Defendant agrees to be bound by the provisions of this Final Judgment pending its approval by this Court;

AND WHEREAS, the Defendant agrees to undertake certain actions and refrain from certain conduct for the purpose of remedying the anticompetitive effects alleged in the Complaint;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I.   JURISDICTION

This Court has jurisdiction over the subject matter and each of the parties to this action. The Complaint states a claim upon which relief may be granted against the Defendant under Section 1 of the Sherman Act, as amended, 15 U.S.C. § 1.

## II.   DEFINITIONS

As used in this Final Judgment:

A.   "NACAC" and "Defendant" mean the National Association for College Admission Counseling, a non-profit trade association with its headquarters in Arlington, Virginia, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

B.   "Agreement" means any agreement, understanding, pact, contract, or arrangement, formal or informal, oral or written, between two or more persons.

C.   "Early Decision" means the college application plan as defined and used by the Ethics Rules.

D.   "Early Decision Incentives Rule" means any Rule or Agreement, or part of a Rule or Agreement, including, but not limited to, Section II.A.3.a.vi of the Ethics Rules, that restrains any person from offering incentives to students applying under an Early Decision application plan that are not available to students applying under a different application plan.

E.   "First-Year Undergraduate Recruiting Rule" means any Rule or Agreement, or part of a Rule or Agreement, including, but not limited to, Section II.B.5 of the Ethics Rules, that

restrains any college or university from recruiting or offering enrollment incentives to first-year college applicants on the basis that (a) a particular date has passed; (b) the applicants have either declined admission or not affirmatively indicated that they are still interested in attending that institution; or (c) the applicants have already enrolled in, registered at, declared their intent to enroll in or register at, or submitted contractual deposits to other institutions.

   F. "Transfer Student Recruiting Rule" means any Rule or Agreement, or part of a Rule or Agreement, including, but not limited to, Section II.D.5 of the Ethics Rules, that restrains any person from recruiting or offering enrollment incentives to transfer students.

   G. "Ethics Rules" means NACAC's Code of Ethics and Professional Practices.

   H. "Rule" means an enforceable regulation governing particular conduct or activities.

   I. "Person" means any natural person, college or university, corporation, company, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, office, or other business or legal entity, whether private or governmental.

   J. "Management" means all officers, directors, committee chairs, and board members of NACAC, or any other person with management or supervisory responsibilities for NACAC's operations.

### III. APPLICABILITY

This Final Judgment applies to NACAC, and to all other persons in active concert or participation with NACAC who receive actual notice of this Final Judgment by personal service or otherwise.

## IV.     PROHIBITED CONDUCT

Defendant shall not establish, attempt to establish, maintain, or enforce any Early Decision Incentives Rule, Transfer Student Recruiting Rule, or First-Year Undergraduate Recruiting Rule. To the extent such prohibited rules currently exist in the Ethics Rules, Defendant must promptly abolish them.

## V.     CONDUCT NOT PROHIBITED

Nothing in Section IV shall prohibit Defendant from maintaining or enforcing any current provisions in the Ethics Rules other than those specifically enumerated in Paragraphs II.D, E, and F.

## VI.     REQUIRED CONDUCT

A.     Within ten (10) days of entry of this Final Judgment, Defendant shall appoint an Antitrust Compliance Officer and identify to United States the Antitrust Compliance Officer's name, business address, and telephone number. Within forty-give (45) days of a vacancy in the Defendant's Antitrust Compliance Officer position, the Defendant shall appoint a replacement, and shall identify to the United States the replacement Antitrust Compliance Officer's name, business address, telephone number, and email address. The Defendant's initial or replacement appointment of an Antitrust Compliance Officer is subject to the approval of the United States in its sole discretion.

B.     The Antitrust Compliance Officer shall:

1.     within sixty (60) days of entry of the Final Judgment, furnish to all of the Defendant's Management a copy of this Final Judgment, the Competitive Impact Statement, and a cover letter in a form attached as Exhibit 1;

2. within sixty (60) days of entry of the Final Judgment, in a manner to be devised by Defendant and approved by the United States, provide the Defendant's Management and employees reasonable notice of the meaning and requirements of this Final Judgment;

3. annually brief the Defendant's Management on the meaning and requirements of this Final Judgment and the antitrust laws;

4. brief any person who succeeds a person in any position identified in Paragraph II(J), within sixty (60) days of such succession;

5. obtain from each member of Management, within sixty (60) days of that person's receipt of the Final Judgment, a certification that he or she (i) has read and, to the best of his or her ability, understands and agrees to abide by the terms of this Final Judgment; (ii) is not aware of any violation of the Final Judgment that has not been reported to the Defendant; and (iii) understands that any person's failure to comply with this Final Judgment may result in an enforcement action for civil or criminal contempt of court against the Defendant and/or any person who violates this Final Judgment;

6. maintain a record of certifications received pursuant to this Section; and

7. annually communicate to the Defendant's Management and employees that they may disclose to the Antitrust Compliance Officer, without reprisal, information concerning any potential violation of this Final Judgment or the antitrust laws.

C. Within sixty (60) days of entry of the Final Judgment, Defendant shall furnish notice of this action to its members through (1) direct communication, in a form

       approved by the United States prior to communication and containing the text of Exhibit 2 and (2) the creation of website pages linked to the Defendant website, to be posted for no less than one (1) year after the date of entry of the Final Judgment, containing the text of Exhibit 2 and links to the Final Judgment, Competitive Impact Statement, and Complaint on the Antitrust Division's website.

D.   Defendant shall:

    1.   upon Management's or the Antitrust Compliance Officer's learning of any violation or potential violation of any of the terms and conditions contained in this Final Judgment, promptly take appropriate action to investigate, and in the event of a violation, terminate or modify the activity so as to comply with this Final Judgment and maintain all documents related to any violation or potential violation of this Final Judgment;

    2.   within sixty (60) days of Management's or the Antitrust Compliance Officer's learning of any violation or potential violation of any of the terms and conditions contained in this Final Judgment, file with the United States a statement describing any violation or potential violation, which shall include a description of any communications constituting the violation or potential violation, including the date and place of the communication, the persons involved, and the subject matter of the communication, and steps taken to remedy any violation; and

        3.        have its CEO or CFO, and its General Counsel, certify in writing to the United States annually on the anniversary date of the entry of this Final Judgment that the Defendant has complied with the provisions of this Final Judgment.

## VII.    COMPLIANCE INSPECTION

A.    For the purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time authorized representatives of the United States, including agents retained by the United States, shall, upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendant be permitted:

        1.        access during Defendant's office hours to inspect and copy, or at the option of the United States, to require Defendant to provide electronic or hard copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of NACAC, relating to any matters contained in this Final Judgment; and

        2.        to interview, either informally or on the record, Defendant's Management, officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendant.

B.    Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendant shall submit written reports or responses

to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

       C.      No information or documents obtained by the means provided in this Section VII shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or for law enforcement purposes, or as otherwise required by law.

       D.      If at the time information or documents are furnished by Defendant to the United States, Defendant represents and identifies in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendant marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give Defendant ten (10) calendar days' notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## VIII.   RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## IX.   ENFORCEMENT OF FINAL JUDGMENT

  A.      The United States retains and reserves all rights to enforce the provisions of this Final Judgment, including the right to seek an order of contempt from the Court. Defendant

agrees that in any civil contempt action, any motion to show cause, or any similar action brought by the United States regarding an alleged violation of this Final Judgment, the United States may establish a violation of the Final Judgment and the appropriateness of any remedy therefor by a preponderance of the evidence, and Defendant waives any argument that a different standard of proof should apply.

      B.      This Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore all competition the United States alleged was harmed by the challenged conduct. Defendant agrees that it may be held in contempt of, and that the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Final Judgment should not be construed against either party as the drafter.

      C.      In any enforcement proceeding in which the Court finds that Defendant has violated this Final Judgment, the United States may apply to the Court for a one-time extension of this Final Judgment, together with other relief as may be appropriate. In connection with any successful effort by the United States to enforce this Final Judgment against Defendant, whether litigated or resolved before litigation, Defendant agrees to reimburse the United States for the fees and expenses of its attorneys, as well as any other costs, including experts' fees, incurred in connection with that enforcement effort, including in the investigation of the potential violation.

      D.      For a period of four (4) years following the expiration of the Final Judgment, if the United States has evidence that Defendant violated this Final Judgment before it expired, the United States may file an action against Defendant in this Court requesting that the Court order

(1) Defendant to comply with the terms of this Final Judgment for an additional term of at least four years following the filing of the enforcement action under this Section, (2) any appropriate contempt remedies, (3) any additional relief needed to ensure the Defendant complies with the terms of the Final Judgment, and (4) fees or expenses as called for in Paragraph IX(C).

## X.     EXPIRATION OF FINAL JUDGMENT

Unless this Court grants an extension, this Final Judgment shall expire seven (7) years from the date of its entry, except that after five (5) years from the date of its entry, this Final Judgment may be terminated upon notice by the United States to the Court and Defendant that the continuation of the Final Judgment no longer is necessary or in the public interest.

## XI.     NOTICE

For purposes of this Final Judgment, any notice or other communication required to be provided to the United States shall be sent to the person at the address set forth below (or such other addresses as the United States may specify in writing to Defendant):

    Chief
    Technology and Financial Services Section
    U.S. Department of Justice
    Antitrust Division
    450 Fifth Street, NW, Suite 7100
    Washington, D.C. 20530

## XII.     PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States' responses to comments. Based upon the record before

the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date:  April 17, 2020

<div style="text-align: right;">_____<br>Chief Judge</div>

# **EXHIBIT 1**

[Company Letterhead]

[Name and Address of Antitrust Compliance Officer]

    Re:    *Early Decision Incentives Rule, Transfer Student Recruiting Rule, or First-Year Undergraduate Recruiting Rule*

Dear [XX]:

    I am providing you this notice regarding a judgment recently entered by a federal judge in Washington, D.C. affecting rulemaking practices. The judgment applies to our association and all of its employees, including you, so it is important that you understand the obligations it imposes on us. [CEO Name] has asked me to let each of you know that [s/he] expects you to take these obligations seriously and abide by them.

    The judgment prohibits us from establishing rules that restrict the ability of colleges to recruit early decision applicants, incoming freshmen, and transfer students. There are limited exceptions to this restriction. You must consult me before determining whether a particular recruiting rule is subject to an exception under the judgment.

    A copy of the court order is attached. Please read it carefully and familiarize yourself with its terms. The judgment, rather than the above description, is controlling. If you have any questions about the judgment or how it affects your activities, please contact me as soon as possible.

    Thank you for your cooperation.

                                      Sincerely,
                                      [Defendant's Antitrust Compliance Officer]

Case 1:19-cv-03706-BAH   Document 11   Filed 04/17/20   Page 13 of 13
Case 1:19-cv-03706-BAH   Document 10-1   Filed 04/16/20   Page 14 of 14


# EXHIBIT 2

Please take notice that National Association for College Admission Counseling ("NACAC") has entered into a settlement with the United States Department of Justice relating to its rulemaking practices.

On DATE XXX, the United States filed a federal civil antitrust Complaint alleging that NACAC established rules that restricted its members' ability to recruit college applicants and transfer students in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. At the same time, the United States filed a proposed settlement that prohibits NACAC from entering into, maintaining, or enforcing such rules.

As part of its settlement with the United States, NACAC confirmed that it has withdrawn any offending rule already in place.

The Final Judgment, which was recently entered by a federal district court, is effective for seven years. Copies of the Complaint, Final Judgment, and Competitive Impact Statement are available at:

[Link to Complaint]
[Link to Final Judgment]
[Link to Competitive Impact Statement]